IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROL A. GANN,                                    Civil No. 05-6260-AA
                                                  OPINION AND ORDER
            Plaintiff,

        vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

            Defendant.
_____

Alan Stuart Graf, P.C.
Alan Graf, Attorney At Law
P.O. Box 98
Summertown, Tennessee 38483
        Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Franco L. Becia
Special Assistant U.S. Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
        Attorneys for defendant

AIKEN, Judge:

        Claimant, Carol Gann, brings this action pursuant to the

Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain

judicial review of a final decision of the Commissioner. The
Commissioner denied plaintiff's application for Supplemental
Security Income (SSI) disability benefits under Title XVI. 42
U.S.C. §§ 405(g), 1383(c)(3). For the reasons set forth below,
the Commissioner's decision is adopted and this case is
dismissed.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed her application for SSI
benefits on October 15, 1998, and agreed with Administrative Law
Judge (ALJ) Dilley to a stipulated period of disability ending
September 30, 2000. Tr. 60-67. Plaintiff filed a second
application for SSI on June 18, 2001, and stipulated as to her
onset of disability. Tr. 454-56, 1015.

Plaintiff's applications were denied initially, and upon
reconsideration. Plaintiff then requested a hearing before an
ALJ. Tr. 449. On August 18, 2003, ALJ DeLaittre issued a
decision denying plaintiff's application for disability. Tr. 22-
32. The Appeals Council denied plaintiff's request for review
making the ALJ's decision the final agency decision. See 20
C.F.R. §§ 404.981, 416.1481, 422.210.

## STATEMENT OF THE FACTS

Plaintiff was 44 years old at the time of the hearing. Tr.
31, 107. She was considered a younger individual. 20 C.F.R. §
416.963(b). Plaintiff completed a GED in 1982. Tr. 31, 468.
Her past work had been as a cashier, motel maid, and waitress.
Tr. 31, 463. Plaintiff had not engaged in any substantial
gainful activity since June 2001. Tr. 31.

///

2   - OPINION AND ORDER

1

## STANDARD OF REVIEW

2          This court must affirm the Secretary's decision if it is

3      based on proper legal standards and the findings are supported by

4      substantial evidence in the record.  Hammock v. Bowen, 879 F.2d

5      498, 501 (9th Cir. 1989).  Substantial evidence is "more than a

6      mere scintilla.  It means such relevant evidence as a reasonable

7      mind might accept as adequate to support a conclusion."

8      Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting

9      Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

10     The court must weigh "both the evidence that supports and

11     detracts from the Secretary's conclusions."  Martinez v. Heckler,

12     807 F.2d 771, 772 (9th Cir. 1986).

13         The initial burden of proof rests upon the claimant to

14     establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486

15     (9th Cir. 1986).  To meet this burden, plaintiff must demonstrate

16     an "inability to engage in any substantial gainful activity by

17     reason of any medically determinable physical or mental

18     impairment which can be expected . . . to last for a continuous

19     period of not less than 12 months. . . ."  42 U.S.C.

20     § 423(d)(1)(A).

21         The Secretary has established a five-step sequential

22     process for determining whether a person is disabled.  Bowen v.

23     Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502,

24     416.920.  First the Secretary determines whether a claimant is

25     engaged in "substantial gainful activity."  If so, the claimant

26     is not disabled.  Yuckert, 482 U.S. at 140; 20 C.F.R.

27     §§ 404.1520(b), 416.920(b).

28     ///

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."  Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, she is not disabled.  If she cannot perform past relevant work, the burden shifts to the Secretary.  In step five, the Secretary must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

(1) The ALJ's Findings

In a prior hearing, on December 29, 2000, ALJ Dilley found that plaintiff's severe impairments of anxiety, depression, post-traumatic stress disorder (PTSD), and Grave's disease, prevented

her from performing any sustained work activity from October 15, 1998, through September 30, 2000. Tr. 25, 63-67. After this date plaintiff was able to return to her past relevant work. Tr. 26. The decision was in accord with plaintiff's stipulation to a closed period of disability, and she did not appeal or request further reconsideration of that determination. Tr. 26, 63-67.

In order for plaintiff to qualify for disability benefits under her current application, she must demonstrate changed circumstances indicating a greater level of disability since the date of her earlier decision; December 29, 2000. See Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988). The burden is on the claimant to prove that she is disabled within the meaning of the Act. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 18, 2001. Tr. 26, Finding 1. See 20 C.F.R. § 416.920(b). This finding is not in dispute.

At step two, the ALJ found that plaintiff had severe impairments of depressive disorder, anxiety disorder, and PTSD. Tr. 31, 19, Finding 2. See C.F.R. § 416.920(c). This finding is in dispute.

At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 31, Finding 2. See 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). This finding is in dispute.

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform simple tasks. Tr. 32, Finding 4. See 20 C.F.R. §§ 416.920(e), 416.945. This finding

1    is in dispute.

2         At step four, the ALJ found that plaintiff was able to

3    perform her past relevant work.   Tr. 32, Finding 4.   See 20

4    C.F.R. §§ 416.920(a)(4)(iv), 416.920(f).   This finding is in

5    dispute.  Because the ALJ found plaintiff not disabled at step

6    four, he did not address step five of the sequential evaluation

7    process.  Tr. 31.  See 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

8    (2) Plaintiff's Assertions of Error

9         A. ALJ's Finding of Certain Impairments as Non-Severe

10        Plaintiff alleges that the ALJ erred when he found certain

11   impairments "non-severe."   Step two of the 5-Step Sequential

12   Analysis, 20 C.F.R. § 404.1520(c), sets forth the requirement

13   that a claimant have a "serious impairment," stating, "If you do

14   not have any impairment or combination of impairments which

15   significantly limits your physical or mental ability to do basic

16   work activities, we will find that you do not have a severe

17   impairment and are, therefore, not disabled.  Id.  "A claim may

18   be denied at step two only if the evidence shows that the

19   individual's impairments, when considered in combination, are not

20   medically severe, i.e., do not have more than a minimal effect on

21   the person's physical or mental ability(ies) to perform basic

22   work activities."   Social Security Ruling 85-28.   Further, the

23   Ninth Circuit has held that "an impairment or combination of

24   impairments can be found "not severe" only if the evidence

25   establishes a slight abnormality that has "no more than a minimal

26   effect on an individual's ability to work."   Tackett v. Apfel,

27   180 F.3d 1094, 1098 (9th Cir. 1999)(internal citation omitted).

28   A non-severe impairment is one that "does not significantly limit

your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). 'Basic work activities' include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and ususal work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b)(1)-(6).

Specifically, plaintiff argues that the ALJ erred in not assessing plaintiff's myoclonic jerking, diffused myoclonus, hyperflexia, episodic upper extremity numbness, degenerative disc disease, and fibromyalgia as a severe impairment. Plaintiff's Opening Brief, p. 16-17. Plaintiff bears the burden to establish the existence of a severe impairment that prevented her from performing substantial gainful activity, and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 416.905, 616.912.

The ALJ did note various symptoms and complaints in the record, however, he found they were transient and did not cause significant vocational limitations. Tr. 26. He also noted that since the prior ALJ decision on December 29, 2000, plaintiff had not demonstrated a worsening of her physical or mental condition, or the addition of any other severe impairment. Tr. 27. I agree.

The ALJ relied on the report of Dr. William Salbador, who examined plaintiff in October 2001 and noted that plaintiff's jerking episodes were improved by Valium and that other than

7    - OPINION AND ORDER

slight anxiety her mental status was otherwise intact.  Tr. 27-28, 567-68.  Dr. Salbador assessed a global assessment of functioning (GAF) score of 55.  Tr. 28, 569.  This score is indicative of a person with "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."[1]

Plaintiff was examined in June 2002 by Judith Eckstein, Ph.D, who noted that plaintiff's IQ was in the 80's, and that her concentration was okay.  Tr. 809-16.  Dr. Eckstein opined that plaintiff could perform "lower level types of employment."  Tr. 813.  Dr. Eckstein examined plaintiff again in June 2003, and again noted that plaintiff's mental status was within normal limits of her IQ level.  Tr. 805-08.  She assessed a GAF score of 55 and added that plaintiff's depression appeared to be situational in part, due to her financial situation.  Id.

Regarding plaintiff's Grave's disease, plaintiff's treating physician, Dr. Davies, reported in September 2001, that plaintiff was well appearing, had no tremors, and was not hypothyroid as a result of her therapy.  Tr. 559-64.  In June 2003, Dr. Davies reported that plaintiff' thyroid disorder was well-controlled by hormone therapy and was not a basis for disability.  Tr. 819.

Regarding plaintiff's symptoms of diffuse myoclonus, hyperreflexia stiffness, and upper extremity numbness, the ALJ noted that the "examining sources were unable to find anything

---

[1] See American Psychiatric Assoc., Diagnostic & Statistical Manual of Mental Disorders 34 (4th TR. ed. 2000) (DSM-IV-TR).

wrong." Tr. 29, 627-30.  Dr. Dandy examined plaintiff in March
and August 2002, and despite plaintiff's subjective complaints,
was unable to find sufficient evidence of fibromyalgia and
therefore unable to make a diagnosis.  Tr. 625.  In July 2002,
Dr. Wheeler noted that plaintiff had exaggerated her responses to
pain when he tested her reflexes and noted that her alleged
dysfunctional level was "greatly disproportionate" to any
objective findings and clinical laboratory findings.  Tr. 740.

In October 2001, Dr. Boggs examined plaintiff and noted
that her physical examination was essentially normal.  Tr. 726-
27.  His impression was that plaintiff had symptoms of diffuse
myoclonus, generalized hyperreflexia, and episodic bilateral
upper extremity numbness, however, he was unable to support this
statement with any diagnosis.  Tr. 726.  Dr. Boggs stated:

> The patient's history is more consistent with myoclonus
> than it is with restless leg syndrome.  The differential
> diagnosis is broad.  Unfortunately, there is no easily
> correctable process such as a medicine intoxication or
> metabolic condition that the patient's symptoms can be
> attributed to.  Certainly cervical stenosis is in the
> differential diagnosis as is demyelinating disease.
> The etiology of the patient's bilateral upper extremity
> numbness is unclear since she reports nerve conduction
> studies were negative in the past.  Perhaps she has
> mild, functional compromise of the brachial plexus
> in the region of the thoracic outlet.

Id.

Further, an EEG was performed in July 2002, in response to
plaintiff's complaint of "numerous myoclonic jerks."  Tr. 723.
The EEG was normal.  Id.  Dr. Boggs noted a relatively normal
physical examination and stated that it was "hard to interpret
all of what pt tells [due] to [psycho-]social factors involved."
Tr. 721.  In January and April 2003, Dr. Boggs' examination of

9    - OPINION AND ORDER

plaintiff was again essentially normal.  Tr. 780-81.

     In February 2003, plaintiff was examined by Dr. Daven who noted that plaintiff's use of medications had significantly improved her tremor symptoms.   Tr. 745-46. Dr. Daven further noted:

> This patient has a mild postural tremor, but an otherwise nonfocal neurological exam.  She presents with a history of intermittent myoclonic-like move-ments and abnormalities of muscle tone, the etiology of which is somewhat unclear.  It is certainly possible that there may be a familial tendency, although based on the history it is certainly possible that this might represent psychogenic myoclonus.  I also reassured the patient that I found no evidence of parkinsonism on her examination today.  At this point, I doubt that this represents a degenerative disorder, although since she has responded to treatment with Keppra and Mirapex, I would recommend that those medicines be continued for now[.]

Tr. 745.

     Finally, in May 2003, plaintiff was examined by physicians at an orthopedic clinic for symptoms of back and hip pain.  Tr. 817-18.   Dr. Van Anrooy and J. Stanko, PA-C, found that plaintiff's examination was essentially normal.   Id. Specifically, they found that plaintiff's neck had "full range of motion without pain;" her neurovascular was normal, her musculoskeletal "back flexes to 90 degrees; [t]here is 15 degrees of extension;" plaintiff's hip "is ranged through internal and external rotation, flexion, and extension without any pain, popping or catching, [s]he has an antalgic gait favoring her right side."  Tr. 818.  Plaintiff's orthopedic hip exam was "essentially normal," noting "mechanical back pain without neurocompressive component." Id.  The doctor's recommendations were patient education, indocin, and home back exercises.  Id.

10   - OPINION AND ORDER

Based on plaintiff's doctors' treatment notes, test results, medical records, and opinions as reflected in the record, I find that the ALJ's opinion limiting plaintiff's severe disabilities to depressive disorder, anxiety disorder, and PTSD is supported by substantial evidence. I find that plaintiff failed to carry her burden to establish the existence of a severe impairment, specifically myoclonic jerking, diffused myoclonus, hyperflexia, episodic upper extremity numbness, degenerative disc disease, and fibromyalgia, that prevented her from performing substantial gainful activity, and that this impairment lasted for at least twelve continuous months.

B. Plaintiff's Testimony

Plaintiff next asserts that the ALJ erred in finding plaintiff's testimony not credible. Plaintiff's Opening Brief, p. 14-16. Once a claimant produces objective medical evidence of an underlying impairment or combination of impairments that could reasonably be expected to produce some degree of pain or other symptoms, and there is no affirmative evidence suggesting the claimant is malingering, the ALJ may reject claimant's testimony regarding the severity of the alleged pain or other symptoms only by offering specific, clear, and convincing reasons for doing so. Smolen, 80 F.3d at 1281-84; Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc)(once plaintiff produces medical evidence of underlying impairment, ALJ may not discredit her testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence).

The ALJ found that plaintiff's articulated inability to perform work was inconsistent with the findings in the medical

11   - OPINION AND ORDER

reports.   Tr. 26-30.   In addition to the medical findings discussed in the section above, the ALJ also noted that in July 2002, Dr. Wheeler examined plaintiff and opined that plaintiff had "exaggerated responses to pain." Tr. 740.   Dr. Wheeler further opined that plaintiff's alleged dysfunctional level seems "greatly disproportionate to objective physical findings as well as the laboratory studies." Id.  Finally, Dr. Wheeler suggested that the reason for this was "secondary gain is a significant factor since [plaintiff] is reapplying for disability." Id.

The ALJ also relied, in part, on the assessments of Disability Determination Services (DDS) physicians, Dr. Kehrli and Bill Hennings, Ph.D.   Tr. 601-11.   They evaluated the evidence in the record and Dr. Kehrli opined that plaintiff's impairments limited her to light work with some postural limitations.   Tr. 594-600.   Dr. Hennings opined that plaintiff could manage simple, two-step tasks, and "though [plaintiff] has depression and a low energy level, she is still capable of sustaining a full work day/week [without] extra supervision." Tr. 611.

The ALJ also noted that plaintiff had failed to continue with any mental health treatment or follow up.   Tr. 28.   See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("ALJ is permitted to consider lack of treatment in his credibility determination.").   If plaintiff's mental condition was as disabling as she alleged, it is logical to believe that she would have sought treatment at some point for the symptoms she now alleges are disabling.

///

The record adequately supports plaintiff's allegations that she experiences some limitations, however, I do not find support for plaintiff's allegation that she is incapable of working due to her impairments and/or symptoms.  Plaintiff's credibility is undermined by the lack of medical evidence to support the severity of limitations she claims.  See Tonapetyan v. Halter, 242 F.3d 1114, 1147-48 (9th Cir. 2001)(ALJ may not base credibility determination of plaintiff's statements regarding limitations solely on lack of objective evidence, however, when combined with other evidence in the record it allows ALJ to draw an adverse inference as to credibility).

In sum, given the fact that the ALJ is in the best position to make a credibility finding, Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989), I find that the ALJ's credibility finding is based on clear and convincing reasons supported by substantial evidence in the record.

C. DDS Doctors' Assessments

At the request of the agency, Dr. Kehrli completed a Residual Physical Functional Capacity Assessment on plaintiff on November 21, 2001.  Tr. 594.  Dr. Kehrli opined that plaintiff could frequently lift ten pounds and occasionally lift twenty pounds, stand and/or walk six hours in an 8-hour day, and sit six hours in an 8-hour day.  Id.  He determined that plaintiff could only occasionally climb, balance, stoop and crouch and should avoid concentrated exposure to hazards.  Tr. 598.

Another state agency consultant, Dr. Bill Hennings, completed a Psychiatric Review Technique also on November 21, 2001.  Dr. Hennings found that plaintiff had suffered 1-2

repeated episodes of decompensation as a result of her major
depressive disorder, PTSD, and dependent personality traits with
history of alcohol and substance abuse. Tr. 606. Dr. Hennings
found plaintiff moderately limited in maintaining social
functioning and mildly limited in her activities of daily living
and maintaining concentration, persistence or pace. Id. On the
Mental Residual Functional Capacity Assessment of the same date,
Dr. Hennings noted plaintiff's moderate limitation in her ability
to understand and remember detailed instructions and to maintain
attention and concentration for extended periods, to work in
coordination with or proximity to others without being distracted
by them, to complete a normal workday and workweek without
interruptions from psychologically-based symptoms and to perform
at a consistent pace without an unreasonable number and length of
rest periods, to interact appropriately with the general public
and to set realistic goals or make plans independently of others.

Social Security Ruling 96-6p requires an ALJ to provide
reasons for rejecting the opinion of non-examining state agency
medical experts. The ALJ rejected the findings of Dr. Kehrli as
inconsistent with the "credible evidence of the record in the
record from treating sources." Tr. 31. Similarly, the ALJ
rejected the psychological limitations identified by Dr. Hennings
asserting that the "evidence did not show significant problems
interacting in public." Tr. 31. To support his conclusion, the
ALJ cites plaintiff's relationship with her mother, brother,
children and grandchildren and her activity of eating out and
occasional shopping. Id. The ALJ also cites plaintiff's pre-
disability employment as a cashier and waitress in further

14   - OPINION AND ORDER

1   support of his conclusion that plaintiff is not psychologically
2   or socially impaired.   Id.

3        Dr. Kehrli reviewed the medical record and concluded that
4   plaintiff was limited to light work with some non-exertional
5   postural limitations.   Tr. 594-600.   The ALJ noted that the
6   additional limitations identified by Dr. Kehrli were not
7   supported by the record as a whole.   Tr. 26-30.   The ALJ found
8   that no other evidence in the record supported Dr. Kehrli's
9   additional postural limitations, therefore the ALJ did not adopt
10  that portion of his opinion in his residual functional capacity.
11  Tr. 30-31.   I find no error here.   See Magallanes v. Bowen, 881
12  F.2d 747, 753 (9th Cir. 1989)(ALJ may accept some, but not all,
13  that an expert says).

14       Regarding Dr. Hennings' statement that plaintiff had
15  moderate difficulties with social functioning, the ALJ met his
16  burden by setting out a detailed and thorough summary of the
17  facts and conflicting clinical evidence, and made findings based
18  on that record.   Tr. 26-30.   The ALJ did, however, adopt Dr.
19  Hennings' assessment that plaintiff could perform simple, two-
20  step tasks and persist at work on a regular and continuous basis.
21  Tr. 30, 601-11.

22       In sum, I find that the ALJ properly evaluated the medical
23  opinions contained in the record.

24       D. Residual Functional Capacity and Return to
         Past Relevant Work
25
26       Plaintiff asserts the ALJ erred in determining she could
27  perform simple tasks.   Tr. 26-32.   The residual functional
28  capacity finding represents the most that an individual can do.

15   - OPINION AND ORDER

See SSR 96-8p (assessment must first identify individual's functional limitations or restrictions and then assess work-related abilities on a function-by-function basis). The ALJ is thus required to explain how the evidence supported his conclusions. The ALJ met this requirement by properly accounting for all of plaintiff's credible limitations.

Finally, the plaintiff asserts that the ALJ erred in his determination that plaintiff could perform her past relevant work. The regulations hold that a claimant has the burden of showing that she can no longer perform her past relevant work. See 20 C.F.R. § 416.920(e). At step four, the ALJ is required to make findings as to plaintiff's residual functional capacity, the physical and mental demands of her past jobs, and whether her residual functional capacity would permit her to return to her past jobs. SSR 82-62. Plaintiff has the burden to produce evidence at this step. Tackett, 180 F.3d at 1098-99. Plaintiff did not meet this burden, and conversely, the ALJ's step four finding that plaintiff could perform her past relevant work as a cashier and waitress was supported by substantial evidence in the record. Tr. 26-31. Moreover, the ALJ was not required to seek a vocational expert's opinion as to whether a hypothetical person with plaintiff's residual functional capacity could perform her past relevant work. Plaintiff's Brief, p. 13-14. See Miller v. Heckler, 770 F.2d 845, 850 (9th Cir. 1985)("The Secretary is required to produce vocational evidence only when the claimant has shown that he or she cannot perform any previous relevant work."). Further, when "documentation and vocational resource material are not sufficient to determine how a particular job is

16    - OPINION AND ORDER

usually performed," it may be necessary to consult a vocational
expert. SSR 82-61. Because sufficient information was available
here the ALJ properly evaluated the evidence and determined
plaintiff could perform her past relevant work.

## CONCLUSION

The Commissioner's decision is based on substantial
evidence and adopted by this court. This case is dismissed.
IT IS SO ORDERED.

Dated this  31   day of July 2006.


                              /s/ Ann Aiken
                            Ann Aiken
                  United States District Judge